**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Norfolk Division**

**MIGUEL ANGEL CHAVEZ RAMOS,**

**Petitioner,**

**v.** **Case No. 2:26cv602**

**JEFFREY CRAWFORD, *et al.*,**

**Respondents.**

## REPORT AND RECOMMENDATION

Pending before the Court is a Petition for a Writ of Habeas Corpus submitted pursuant to 28 U.S.C. § 2241 ("Petition"), ECF No. 1. This case was referred to the undersigned United States Magistrate Judge ("the undersigned") pursuant to 28 U.S.C. § 636(b)(1)(A)–(B) and Rule 72(b) of the Federal Rules of Civil Procedure. For the reasons explained below, the undersigned **RECOMMENDS** that the Petition, ECF No. 1, be **GRANTED**, and that Petitioner be released from custody.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Petitioner Miguel Angel Chavez Ramos filed the instant Petition seeking release from ICE custody or a fair bond hearing before an Immigration Judge ("IJ"). ECF No. 1 at 9. Petitioner was taken into immigration custody on March 12, 2026, and is currently housed at Farmville Detention Center, located in the Eastern District of Virginia. *See id.* at 1, 5.

*1. Petitioner's Immigration History*

Petitioner is a citizen of Peru. ECF No. 12, attach. 1 at ¶ 5. On October 21, 2022, Customs and Border Protection ("CBP") encountered Petitioner. *Id.* at ¶ 6. CBP agents determined Petitioner arrived in the United States without being admitted or paroled and processed him for

expedited removal pursuant to 8 U.S.C. § 1225(b)(1)(A). *Id.* at ¶ 6. Petitioner then expressed a fear of returning to Peru, and was referred for a credible fear interview with U.S. Citizenship and Immigration Services ("USCIS"). *Id.* at ¶ 7. Petitioner was then paroled out of CBP custody.[1] *Id.*

An asylum officer initially determined Petitioner did not have a credible fear of persecution upon returning to Peru, however, on February 27, 2023, an IJ vacated that finding. *Id.* at ¶ 8. On March 20, 2023, Petitioner was issued a Notice to Appear charging him with inadmissibility under § 1182(a)(7)(A)(i)(I) as an alien who is not in possession of any valid entry documents. *Id.* Petitioner was placed into regular removal proceedings pursuant to § 1225(b)(1)(B). *Id.* On October 23, 2023, DHS filed a Form I-263 with the immigration court, charging Petitioner with being inadmissible to the United States under § 1182(a)(6)(A)(i) as an alien present in the United States without being admitted or parole, or who arrived in the United States at any time or place other than designated by the Attorney General. *Id.* at ¶ 9. The immigration court denied Petitioner's applications for relief from removal and ordered Petitioner removed to Peru on May 13, 2025. *Id.* at ¶ 10. Petitioner timely filed an appeal, and that appeal is pending with the Board of Immigration Appeals. *Id.*

Petitioner was arrested for Driving While Intoxicated ("DWI") on March 9, 2026. *Id.* at ¶ 11. During a routine check-in on March 12, 2026, immigration officials detained Petitioner. *Id.* at ¶ 13. On April 7, 2026, Petitioner appeared with counsel for a custody redetermination before an IJ. *Id.* The immigration judge denied Petitioner's request for bond. *Id.*; ECF No. 12, attach. 2 (Order of the IJ) *see also* ECF No. 15 (audio file of bond hearing).[2] First, the IJ determined that

---

[1] Respondents offer no information about the statutory authority for Petitioner's parole or any other details regarding the length or conditions of Petitioner's parole.

[2] Respondents submitted an audio file of Petitioner's bond hearing, which the Court reviewed. *See* ECF No. 15. At the bond hearing, the IJ as well as counsel for the Petitioner and the Government revealed additional details regarding Petitioner's circumstances while he was on parole, including that: (1) Petitioner

he lacked jurisdiction to consider Petitioner's request for bond, citing Matter of Q. Li and Matter of M-S. ECF No. 12, attach. 2. Alternatively, the IJ determined that, even if he had jurisdiction to consider bond, Petitioner posed a danger to the community due to his DWI arrest. *Id.*; ECF No. 15. Petitioner's DWI charge was nolle prossed on July 10, 2026. ECF No. 16 at 2–5.

*2. Procedural History of the Instant Habeas Petition*

The Court received and filed the Petition on June 16, 2026. ECF No. 1 at 1. Therein, the Petitioner alleges that the immigration court would not give him a bond hearing because they classified him as detained under § 1225(b), as opposed to § 1226(a). *Id.* at 6. Petitioner alleges that his detention violates his substantive and procedural due process rights under the Fifth Amendment of the United States Constitution. *Id.*

On June 18, 2026, the Court ordered Respondents to show cause why the Petition should not be granted ("the Service Order"). ECF No. 5. Specifically, the Court ordered Respondents to file a response to the Petition addressing: (1) whether the central legal issue in this action is whether Petitioner is considered an applicant for admission under § 1225(b) or is eligible for discretionary bond under § 1225(a), and (2) whether there are any unique factual circumstances that distinguish this Petition from other recently filed and adjudicated cases presenting the same issue such that the Court should consider this Petition differently. *Id.*

Respondents filed their response to the Petition on June 24, 2026. ECF No. 12. Respondents submit that the Petition is unique because Petitioner already received a bond hearing before an IJ. *Id.* at 1–3. Respondents argue that because Petitioner received a bond hearing, the

---

has appeared at all scheduled court proceedings and check-ins with ICE; (2) he has had the same fixed address upon his arrival into the United States in 2022; (3) his sister and brother-in-law are U.S. citizens and are supporting him; (4) Petitioner has complied with ICE supervision and wore an ankle monitor; (5) he was released on bond for his DWI case; (6) he has a stable job which is waiting for him to return to work. *Id.*

Immigration and Nationality Act precludes judicial review of the Petition. *Id.* at 3–6. They further argue that even if the Court exercises jurisdiction, Petitioner is subject to mandatory detention pursuant to 8 U.S.C. § 1225(b)(1)(B)(ii). *Id.* at 7. Petitioner filed a submission on July 20, 2026, reiterating his request for review of his custody status, and advising the court that his charges pending in Prince William County General District Court were nolle prossed. ECF No. 16.

## II. DISCUSSION

Pursuant to 28 U.S.C. § 2241, federal courts are authorized to issue a writ of habeas corpus to one who "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). "The writ of habeas corpus has traditionally 'served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest.'" *Luna Sanchez v. Bondi*, No. 1:25-cv-018888, 2025 WL 3191922, at *2 (E.D. Va. Nov. 14, 2025) (quoting *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001)). Habeas is "regularly invoked on behalf of noncitizens." *Id.* (quoting *Quispe-Ardiles v. Noem*, No. 1:25-cv-01382, 2025 WL 2783800, at *3 (E.D. Va. Sept. 30, 2025)) (additional citations omitted). After considering the response to a habeas petition, "[t]he court shall summarily hear and determine the facts, and dispose of the matter as law and justice require." 28 U.S.C. § 2243.

### *1. Jurisdiction*

At the outset, Respondents argue that this Court lacks jurisdiction to review the Petition for two reasons. First, they argue that this Court does not have jurisdiction to review the Petition because § 1226(e) precludes judicial review of IJ decisions regarding bond. ECF No. 12 at 3–5. Second, Respondents argue that this Court does not have jurisdiction because § 1252(a)(2)(B)(ii) precludes federal courts from reviewing any "decision or action of the Attorney General or the Secretary of Homeland Security." ECF No. 12 at 5–6. Courts in this district have interpreted both

provisions to mean that a petitioner cannot challenge discretionary determinations by the Attorney General or federal immigration officials, but a petitioner can challenge whether the procedures used by immigration officials comport with due process. *Cf. Lucas Juarez v. Perry*, No. 1:26-CV-563, 2026 WL 1419122, at *4 (E.D. Va. May 20, 2026) (holding that neither § 1226(e) nor § 1252(a)(2)(B)(ii) prevent the court from exercising jurisdiction where discretionary determinations are at issue) (citing cases).

The Court finds Respondents' jurisdictional arguments without merit. While Petitioner frames his argument in terms of whether he is subject to mandatory detention under § 1225(b)(2)(A) or discretionary detention under § 1226(a), Respondents concede that the proper issue is whether, after previously been released on parole, Petitioner remains subject to mandatory detention under § 1225(b)(1)(B)(ii).[3] Petitioner argues that his detention violates his due process rights. *See* ECF No. 1 at 6. He does not challenge any discretionary determination made by the Attorney General or federal immigration officials. *See* ECF No. 1. Nor does he reference the April 7, 2026, bond hearing or otherwise challenge the discretionary bond determination by the IJ. Accordingly, neither § 1226(e) nor § 1252(a)(2)(B)(ii) preclude this Court from reviewing the Petition. *See Omari v. Lyons*, Case No. 1:25cv2483, ECF No. 9 at 5, (E.D. Va. Feb. 17, 2026) ("The Court is not deprived of jurisdiction to consider the revocation of Petitioner's parole because DHS does not have pure discretion to revoke parole.").

*2. Merits Analysis*

Turning to the merits of the Petition, the Court finds that the central issue in this Petition is whether, having previously been released on parole, Petitioner's detention under § 1225(b)(1)(B)(ii) violates his due process rights. Respondents represent that although Petitioner

---

[3] Pro se pleadings are entitled to liberal construction. *See Merritt v. United States*, 499 F. Supp. 3d 249, 254 (E.D. Va. 2020).

was previously granted parole, he is subject to mandatory detention pursuant to § 1225(b)(1)(B), an argument which has been rejected by this Court under similar circumstances. ECF No. 12 at 7 (citing *Omari*, Case No. 1:25cv2483, ECF No. 9). Respondents reincorporate their arguments from *Omari* in the instant action. *Id.*

Respondents submitted an affidavit from Charles M. Byrne, Assistant Field Office Director for ICE Enforcement and Removal Operations. ECF No. 12, attach. 1. The affidavit provides some details about Petitioner's immigration history but does not provide any details regarding Petitioner's parole or what steps, if any, DHS took to terminate it.[4] Because Respondents represent that *Omari* represents similar circumstances to this action, the Court finds that this case is legally and factually similar to *Omari v. Lyons*.

In *Omari*, the court explained the legal framework to apply when a noncitizen is released on parole:

> "Every year, hundreds of thousands of aliens are apprehended at or near the border attempting to enter this country illegally." *Dep't of Homeland Sec, v. Thuraissigiam*, 591 U.S. 103, 106 (2020). Persons detained upon arrival into the United States fall into two categories: noncitizens including those who are "initially determined to be inadmissible due to fraud, misrepresentation, or lack of valid documentation" or specially designated by the Attorney General covered under 8 U.S.C. § 1225(b)(1), and "most other applicants for admission" covered under the "catchall" provisions of 8 U.S.C. § 1225(b)(2). *Jennings v. Rodriguez*, 583 U.S. 281, 287 (2018).
>
> Persons subject to Section 1225(b)(1) are "normally ordered removed 'without further hearing or review' pursuant to an expedited removal process." *Id.* But, if a noncitizen subject to Section 1225(b)(1) indicates either an "intention to apply for asylum' or a "fear of persecution," then they will be referred for an asylum interview by an immigration officer. *Id.* If the officer determines that the noncitizen has a "credible fear" of persecution, then the claim will receive "full consideration"

[4] At the bond hearing, counsel for the Government stated that Petitioner was taken into custody for violating an alternative to detention agreement. It is not clear to the Court whether that agreement is legally distinct from parole as explained in *Omari*, or whether the fact that Petitioner had received a bond hearing has any legal significance at all. However, in this matter, Respondents represented that Petitioner was released on parole (*see* ECF No. 12 at 2; ECF No. 12, attach. 1 at 3), and that this matter is similar to *Omari*. Accordingly, the Court accepts Respondents' representation that this matter is sufficiently similar to *Omari*.

in standard removal proceedings pursuant to 8 U.S.C. § 1229a. *Thuraissigiam*, 591 U.S. at 110.

In such a scenario, the noncitizen "shall be detained for further consideration of the application for asylum." 8 U.S.C. § 1225(b)(1)(B)(ii). But even so, the government may still release the noncitizen on parole "on a case by case basis for urgent humanitarian reasons or significant public benefit." *Jennings*, 583 U.S. at 288 (citing 8 U.S.C. § 1182(d)(5)(A)). Regulations require that, in determining whether parole is appropriate, DHS officials "should apply reasonable discretion" and may consider "all relevant factors" including: the giving of an undertaking by the applicant, counsel, or sponsor to ensure appearances or departure; community ties such as close relatives with known addresses; and agreement to reasonable conditions (such as periodic reporting of whereabouts." 8 C.F.R. § 212.5(d) (noting that appropriate bond or "reasonable assurances that the alien will appear at all hearings, and/or depart the United States when required to do so" may be required).

Humanitarian parole "shall not be regarded as an admission of the alien" and if parole is revoked, "the alien shall forthwith return or be returned to the custody from which he was paroled and thereafter his case shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States." 8 U.S.C. § 1182(d)(5)(A). But in revoking parole, Section 1182(d)(5)(A) requires that the DHS determine that "the purposes of such parole . . . have been served." Moreover, the regulations specify that:

> (1) Automatic. Parole shall be automatically terminated without written notice (i) upon the departure from the United States of the alien, or, (ii) <u>if not departed, at the expiration of the time for which parole was authorized, and in the latter case the alien shall be processed in accordance with paragraph (e)(2) of this section except that no written notice shall be required</u>.
>
> (2)(i) On notice. In cases not covered by paragraph (e)(1) of this section, <u>upon accomplishment of the purpose for which parole was authorized or when in the opinion of one of the officials listed in paragraph (a) of this section, neither humanitarian reasons nor public benefit warrants the continued presence of the alien in the United States, parole shall be terminated</u> upon written notice to the alien and he or she shall be restored to the status that he or she had at the time of parole. When a charging document is served on the alien, the charging document will constitute written notice of termination of parole, unless otherwise specified. Any further inspection or hearing shall be conducted under section 235 or 240 of the Act and this chapter, or any order of exclusion, deportation, or removal previously entered shall be executed. If the exclusion, deportation, or removal order cannot be executed within a reasonable time, the alien shall again be released on parole unless in

> the opinion of the official listed in paragraph (a) of this section the public interest requires that the alien be continued in custody.

8 C.F.R. § 212.5(e) (emphasis added).

*Omari,* Case No. 1:25cv2483, ECF No. 9 at 2–4. In *Omari*, the petitioner's parole purportedly terminated one year after its issuance, but there was nothing in the record suggesting that DHS contacted the petitioner at the end of the one-year period, and the petitioner appeared to have remained out of custody on parole, and without incident until he was arrested by ICE. *Id.* at 5. Accordingly, the court held that "[f]undamentally, Federal Respondents have effectively revoked Petitioner's parole and detained him but without any notice, hearing or individualized consideration of Petitioner's circumstances or whether the purposes of parole had been accomplished that the regulations and due process require." *Id.* at 5–6 (citing cases). The court then determined that the petitioner's current detention was unlawful and that he must be released. *Id.* at 6.

Given Respondents' representation that *Omari* is similar to the instant action, and their request to reincorporate their arguments from *Omari*, the Court finds that the cases are sufficiently similar to warrant the same result. Like in *Omari*, "Respondents have effectively revoked Petitioner's parole and detained him but without any notice, hearing or individualized consideration of Petitioner's circumstances or whether the purposes of parole had been accomplished that the regulations and due process require." *Omari*, Case No. 1:25cv2483, ECF No. 9 at 5–6. Accordingly, Petitioner's current detention is unlawful and Respondents must release him.[5]

[5] The Court notes that even though Petitioner was given a bond hearing, both grounds the IJ cited to support Petitioner's detention—lack of jurisdiction and danger to the community based on a charge that was nolle prossed—do not appear to pass constitutional muster. *See Juarez*, 2026 WL 1419122, at *7–8.

## III. RECOMMENDATION

For the reasons explained above, the Court **RECOMMENDS** that the Petition, ECF No. 1, be **GRANTED**.[6]

The Court further **RECOMMENDS** that:

- Respondents release Petitioner from custody with all of his personal property subject to the conditions of his existing parole, except for the any time limitations periods (if applicable), within **ONE DAY** of entry of final order in this matter;
- Respondents—along with their officers, agents, servants, employees, attorneys, successors, and assigns, and all persons acting in concert with them, be **ENJOINED** from rearresting Petitioner unless (1) he commits a violation of any federal, state, or local law; (2) he fails to comply with the conditions of parole, except for the one-year limitation; or (3) his parole has been lawfully revoked in a manner consistent with 8 C.F.R. § 212.5(e); and that
- Respondents file a status report with the Court within **THREE DAYS** of Petitioner's release to confirm that he has been released from custody.

## IV. REVIEW PROCEDURE

By receiving a copy of this Report and Recommendation, Petitioner is notified that:

---

[6] To the extent Petitioner seeks an Emergency Temporary Restraining Order regarding his claim of assault at Farmville Detention Center (*see* ECF No. 1 at 8), the Court **RECOMMENDS** that motion be denied. The "essence" of a petition for a writ of habeas corpus challenges the "fact or duration" of confinement and seeks a determination that the petition is entitled to immediate or speedier release. *Toure v. Hott*, 458 F. Supp. 3d 387, 398 (E.D. Va. 2020) (citations omitted). While Petitioner does not ask for any specific relief in this motion, it does not appear to challenge the fact or duration of his confinement. The Court notes that officials at Farmville Detention Center appeared to investigate Petitioner's allegations based on his formal complaint. *See* ECF No. 13. If Petitioner seeks additional relief related to this incident, it should not be through a petition for a writ of habeas corpus. *See Toure*, 458 F. Supp. 3d at 398.

1. Any party may serve on the other party and file with the Clerk of this Court specific written objections to the above findings and recommendations within fourteen days from the date this Report and Recommendation is forwarded to the objecting party. *See* 28 U.S.C. § 636(b)(1)(C) and Federal Rule of Civil Procedure 72(b), computed pursuant to Federal Rule of Civil Procedure 6(a). A party may respond to another party's specific written objections within fourteen days after being served with a copy thereof. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).

2. A United States District Judge shall make a *de novo* determination of those portions of this Report and Recommendation or specified findings or recommendations to which objection is made. The parties are further notified that failure to file timely specific written objections to the above findings and recommendations will result in a waiver of the right to appeal from a judgment of this Court based on such findings and recommendations. *Thomas v. Arn*, 474 U.S. 140 (1985); *Carr v. Hutto*, 737 F.2d 433 (4th Cir. 1984), *cert. denied*, 474 U.S. 1019 (1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984), *cert. denied*, 467 U.S. 1208 (1954).

The Clerk is **DIRECTED** to forward a copy of this Report and Recommendation to Petitioner and to counsel of record for Respondents.

/s/

Lawrence R. Leonard
United States Magistrate Judge

Lawrence R. Leonard
United States Magistrate Judge

Norfolk, Virginia
July 28, 2026